**THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**(INDIANAPOLIS DIVISION)**

| | |
|---|---|
| PAUL WEST, On Behalf of Himself And All Others Similarly Situated, | **Civil Action:** |
| Plaintiff, | |
| vs. | **1: 8-cv-0486-DFH-TAB** |
| WELLPOINT, INC., RANDAL A. BROWN, ANGELA F. BRALY, WAYNE DEVEYDT, LARRY C. GLASSCOCK, THE PENSION COMMITTEE, and JOHN DOES 1-20, | |
| Defendants. | |

**CLASS ACTION COMPLAINT**
**FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT**
**INCOME SECURITY ACT ("ERISA")**

Plaintiff, a participant in the WellPoint 401(k) Retirement Savings Plan (formerly known as the Anthem 401(K) Long Term Savings Investment Plan) (the "Plan"), covering substantially all employees of WellPoint Inc. and its subsidiaries ("WellPoint" or the "Company"), individually and on behalf of all others similarly situated (the "Participants"), alleges as follows:

**INTRODUCTION**

1.      This is a class action brought pursuant to § 502 of ERISA, 29 U.S.C. § 1132, against the Plan's fiduciaries, including WellPoint, on behalf of Participants in and beneficiaries of the Plan.

2.      Throughout the Class Period (January 23, 2008 to the present), the Plan invested in WellPoint common stock ("WellPoint Stock" or "Company Stock"), which was offered as one of the investment alternatives in the Participant Contribution Component of the Plan.

3.      Plaintiff's claims arise from the failure of Defendants, who are Plan fiduciaries, to act solely in the interest of the Participants and beneficiaries of the Plan, and to exercise the required skill, care, prudence, and diligence in administering the Plan and the Plan's assets during the Class Period, as is required by ERISA.

4.      Specifically, Plaintiff alleges in Count I that Defendants breached their fiduciary duties to Plaintiff in violation of ERISA by failing to prudently and loyally manage the Plan's investment in WellPoint Stock by continuing to offer Company Stock as an investment option, and to make contributions in Company Stock, instead of suitable short-term options within the Plan, when the stock no longer was a prudent investment for Participants' retirement savings. In Count II, Plaintiff alleges that Defendants who communicated with Participants regarding the Plan's assets, or had a duty to do so, failed to provide Participants with complete and accurate information regarding WellPoint Stock sufficient to advise Participants of the true risks of investing their retirement savings in Company Stock.   In Count III, Plaintiff alleges that Defendants, responsible for the selection, removal, and, thus, monitoring of the Plan's fiduciaries, failed to properly monitor the performance of their fiduciary appointees and remove and replace those whose performance was inadequate.   In Count IV, Plaintiff alleges that Defendants breached their duties and responsibilities to avoid conflicts of interest and serve the interests of the Participants in and beneficiaries of the Plan with undivided loyalty. In Count V, Plaintiff alleges that Defendants breached their duties and responsibilities as co-fiduciaries in the manner and to the extent set forth in the Count.   Finally, in Count VI, Plaintiff states a claim against WellPoint for knowing participation in the fiduciary breaches alleged herein.

5.      This action is brought on behalf of the Plan and seeks losses to the Plan for which Defendants are personally liable pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2). In addition, under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), Plaintiff seeks other equitable relief from Defendants, including, without limitation, injunctive relief and, as available under applicable law, constructive trust, restitution, and other monetary relief.

6.      As a result of Defendants' fiduciary breaches, as hereinafter enumerated and described, the Plan has suffered substantial losses, resulting in the depletion of millions of dollars of the retirement savings and anticipated retirement income of the Plan's Participants. Under ERISA, the breaching fiduciaries are obligated to restore to the Plan the losses resulting from their fiduciary breaches.

7.      Because Plaintiff's claims apply to the Participants and beneficiaries as a whole, and because ERISA authorizes Participants such as Plaintiff to sue for plan-wide relief for breach of fiduciary duty, Plaintiff brings this as a class action on behalf of all Participants and beneficiaries of the Plan during the Class Period. Plaintiff also brings this action as a participant seeking Plan-wide relief for breach of fiduciary duty on behalf of the Plan.

8.      In addition, because the information and documents on which Plaintiff's claims are based on, for the most part, are solely in Defendants' possession, certain allegations are by necessity upon information and belief. At such time, Plaintiff has had the opportunity to conduct additional discovery, Plaintiff will, to the extent necessary and appropriate, further amend the Complaint, or, if required, seek leave to amend to add such other additional facts as are discovered that further support each of the following Counts below.

## JURISDICTION AND VENUE

9. **Subject Matter Jurisdiction.** This is a civil enforcement action for breach of fiduciary duty brought pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a). This Court has original, exclusive subject matter jurisdiction over this action pursuant to the specific jurisdictional statute for claims of this type, ERISA § 502(e)(l), 29 U.S.C. § 1132(e)(l). In addition, this Court has subject matter jurisdiction pursuant to the general jurisdictional statute for "civil actions arising under the ... laws ... of the United States." 28 U.S.C. § 1331.

10. **Personal Jurisdiction.** ERISA provides for nation-wide service of process, ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). All of Defendants are residents of the United States, and this Court therefore has personal jurisdiction over them. This Court also has personal jurisdiction over them pursuant to Fed. R. Civ. P. 4(k)(l)(A), because they all would be subject to the jurisdiction of a court of general jurisdiction in the Southern District of Indiana.

11. **Venue.** Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan was administered in this district, some or all of the fiduciary breaches for which relief is sought occurred in this district, and/or some Defendants reside or maintain their primary place of business in this district.

## PARTIES

### Plaintiff

12. **Plaintiff Paul West** is a resident of Door County, Wisconsin. Plaintiff is a former WellPoint employee and is a participant in the Plan.

### Defendants

13. **Defendant WellPoint** describes itself as the largest health benefits company in

- 4 -

terms of commercial membership in the United States. The Company is an independent licensee of the Blue Cross and Blue Shield Association and serves its members as the Blue Cross licensee in California, Colorado, Connecticut, Georgia, Indiana, Kentucky, Maine, Missouri, Nevada, New Hampshire, New York, Ohio, Virginia and Wisconsin. WellPoint's members fall principally into two categories: (a) "self-funded" policies that are managed by WellPoint on behalf of the members ("Self-Funded members"; "Self-Funded products"); and (b) fully insured products ("Fully-Insured members"; "Fully-Insured products"). Under self-funded products, WellPoint charges a fee for services, and the employer or plan sponsor reimburses WellPoint for all or most of the healthcare costs. For fully insured products, WellPoint charges a premium and assumes all or a portion of the healthcare risk. Self-funded products are less profitable for WellPoint than fully insured products. During the Class Period, WellPoint was registered with the SEC and filed annual, quarterly and other reports with the SEC.

14. Throughout the Class Period, WellPoint's responsibilities included, along with its officers, directors and executives, broad oversight of and ultimate decision-making authority respecting the management and administration of the Plan and the Plan's assets, as well as the appointment, removal, and, thus, monitoring of other fiduciaries of the Plan that it appointed, or to whom it assigned fiduciary responsibility. Throughout the Class Period, the Company exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets.

15. **Defendant Angela F. Braly ("Braly")** is, and has been since June 1, 2007, WellPoint's Chief Executive Officer and President and a member of the Company's Board of Directors. Prior to June 1, 2007, Braly served as WellPoint's executive vice president, general

counsel and chief public affairs officer. Defendant Braly was a principal spokesperson on the Q4 2007 Earnings Conference Call and the March 10, 2008 Conference Call and in WellPoint's press releases and signed the Company's Form 10-K filed with the SEC on February 21, 2008. During the Class Period, defendant Braly was a fiduciary within the meaning of ERISA, because she exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, she possessed discretionary authority or discretionary responsibility in the administration of the Plan, and she exercised authority or control with respect to the management of the Plan's assets.

16.     *Defendant Wayne DeVeydt ("DeVeydt")* is, and has been since before the beginning of the Class Period, WellPoint's Executive Vice President and Chief Financial Officer. DeVeydt has also had responsibility for investor relations and became chief of staff to the Office of the CEO in 2006.   DeVeydt was a principal spokesperson on the Q4 2007 Earnings Conference Call and the March 10, 2008 Conference Call and signed the Company's Form 10-K filed with the SEC on February 21, 2008.  During the Class Period, defendant DeVeydt was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

17.     *Defendant Larry C. Glasscock ("Glasscock")* is, and has been since November 2005, Chairman of the Company's Board of Directors. Glasscock signed the Company's Form 10-K filed with the SEC on February 21, 2008 and sold $6.6 million worth of WellPoint stock

during the Class Period at artificially inflated prices. During the Class Period, defendant Glasscock was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

18.     *Defendant Randal A. Brown ("Brown")* is the Chairman of the Pension Committee. Defendant Brown also signed the Company's Form 11-K, dated June 13, 2007. During the Class Period, defendant Brown was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

19.     Upon information and belief, *defendant the Pension Committee (the "Committee")* consists of various officers and employees who managed the operation and administration of the Plan. The Committee is a named fiduciary of the Plan and exercised discretionary authority and control with respect to managing and administering the Plan and its assets.

20.     *Defendants John Does 1-20 ("John Does 1-20")* are residents of the United States and are or were fiduciaries of the Plan during the Class Period. These defendants whose identities are currently unknown to Plaintiff, may include additional Wellpoint employees. Once their identities are ascertained, Plaintiff will seek leave to join them under their true names.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action as a class action pursuant to Rules 23(a), (b)(l), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of himself and the following class of persons similarly situated (the "Class"):

> All persons who are participants in or beneficiaries of the Plan at any time between January 23, 2008 and the present (the "Class Period") and whose accounts included investments in WellPoint Stock.

22.     Plaintiff meets the prerequisites of Rule 23(a) to bring this action on behalf of the Class because:

23.     ***Numerosity.***   The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are, at a minimum, over ten thousand members of the Class who participated in, or were beneficiaries of, the Plan during the Class Period.

24.     ***Commonality.***   Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     Whether Defendants acted as fiduciaries;

(b)     Whether Defendants breached their fiduciary duties to the Plan, Plaintiff and members of the Class by failing to act prudently and solely in the interests of the Plan, and the Plan's Participants and beneficiaries;

(c)     Whether Defendants violated ERISA;

(d)     Whether the Plan suffered a loss and, by extension, members of the Class

sustained a diminution in vested benefits, and

(d)     What is the proper measure of loss to the Plan and subsequent allocation of vested benefits to the Plan's Participants.

25.     ***Typicality.***  Plaintiff's claims are typical of the claims of the members of the Class because the Plan, Plaintiff and the other members of the Class, each sustained a diminution in vested benefits arising out of Defendants' wrongful conduct in violation of federal law as complained of herein.

26.     ***Adequacy.***  Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action, complex, and ERISA litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

27.     Class action status in this ERISA action is warranted under Rule 23(b)(l)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

28.     Class action status is also warranted under the other subsections of Rule 23(b) because: (i) prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants; (ii) Defendants have acted or refused to act on grounds generally applicable to the Plan and the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole; and (iii) questions of law or fact common to members of the Class predominate

over any questions affecting only individual members and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

## THE PLAN

29.    The Plan is an "employee pension benefit plan" as defined by §§ 3(3) and (3)(2)(A) of ERISA, 29 U.S.C. §§ 1002(3) and 1002(2)(A).

30.    The Plan is a legal entity that can sue or be sued. ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1).

31.    In this action for breach of fiduciary duty, the Plan is neither a plaintiff nor a defendant. Rather, Plaintiff requests relief for the benefit of the Plan and for the benefit of its Participants.

32.    The Plan is a "defined contribution plan" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), in that the Plan provides for individual accounts for each Participant and for benefits based solely upon the amount contributed to the Participants' account, and any income, expenses, gains and losses, and any forfeitures of accounts of other Participants which may be allocated to such Participants' accounts. Consequently, retirement benefits provided by the Plan are based solely on the amounts allocated to each individual's account.

33.    The Plan is a voluntary contribution Plan whereby Participants make contributions to the Plan ("Voluntary Contributions") and direct the Plan to purchase investments with those contributions from options pre-selected by Defendants which are then allocated to Participants' individual accounts.

**Plan Fiduciaries**

34. ***Named Fiduciaries***.  ERISA requires every plan to provide for one or more named fiduciaries of the plan pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1002(21)(A).  The person named as the "administrator" in the plan instrument is automatically a named fiduciary, and in the absence of such a designation, the sponsor is the administrator.  ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

35. ***De Facto Fiduciaries***.  ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under ERISA § 402(a)(1), but also any other persons who in fact perform fiduciary functions.  Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management of disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

36. Each of the Defendants was a fiduciary with respect to the Plan and owed fiduciary duties to the Plan and its Participants under ERISA in the manner and to the extent set forth in the governing Plan documents, through their conduct, and under ERISA.

37. As fiduciaries, Defendants were required by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) to manage and administer the Plan -- and the Plan's investments -- solely in the interest of the Plan's Participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity

and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

38.     Plaintiff does not allege that each Defendant was a fiduciary with respect to all aspects of the Plan's management and administration. Rather, as set forth below, Defendants were fiduciaries to the extent of the specific fiduciary discretion and authority assigned to or exercised by each of them, and, as further set forth below, the claims against each Defendant are based on such specific discretion and authority.

## WELLPOINT STOCK WAS AN
## IMPRUDENT INVESTMENT FOR THE PLAN

39.     The Class Period begins on January 23, 2008. On that date, the Company issued a press release announcing its Q4 and full year 2007 results. Defendant DeVeydt is quoted in the press release stating that "[w]e remain confident in our earnings per share target of $6.41 for 2008, which represents annual growth of 15.3 percent." In discussing membership, the press release stated that approximately 144,000 members from Connecticut's Medicaid managed care programs had been converted in Q4 2007 from fully insured to self-funded contractual arrangements. Defendants stated that these 144,000 members were currently being serviced under a self-funded arrangement set to expire on February 29, 2008. Under the heading "OUTLOOK," Defendants stated, among other things, that WellPoint continues to expect net income of $6.41 per share, expects medical enrollment to reach approximately 35.6 million members, representing growth for the year of approximately 800,000 members, and expects the benefit expense ratio to be approximately 81.6 percent.

40.     Also on January 23, 2008, WellPoint held its Q4 2007 Earnings Conference Call during which defendants Braly and DeVeydt were the principal spokespersons for WellPoint.

Numerous analysts joined the conference call, including analysts from Goldman Sachs, JPMorgan, Citigroup and Oppenheimer & Co. On the conference call, defendant Braly stated that WellPoint was "maintaining our $6.41 earnings per share" guidance for 2008 and that "reduced membership" experienced in 2007 had virtually no impact on WellPoint's earnings per share. Defendant DeVeydt reiterated the statements made by Braly on the conference call. While acknowledging that WellPoint had experienced a rise in medical costs in Q4 2007, defendant DeVeydt was quick to assure the market that:

&bull; "[t]he higher than expected 4Q '07 benefit expense ratio resulted from items that generally should not impact 2008";

&bull; "our 2008 benefit expense ratio guidance remains at 81.6% for the year, given the strong full-year 2007 operating results";

&bull; "we continue to expect our 2008 medical cost trend to also be less than 8%";

&bull; "medical enrollment is now expected to approximate 35.6 million members with fully insured membership now expected to be 17.1 million and self-funded membership expected to be 18.5 million"; and

&bull; "operating revenue is now expected to total approximately $62.6 billion."

41. On the Q4 2007 Earnings Conference Call, Defendants provided detailed information concerning WellPoint's 2007 results and the impact on WellPoint's 2008 results, both on a year-end basis and a quarterly basis. Defendants also answered very specific questions directed to them by the attending analysts and made a series of additional false and misleading statements in those answers.

42.     On the conference call, several of the Wall Street analysts asked questions of management. The analyst from Morgan Stanley raised the issue of the relationship between WellPoint's medical costs, product pricing and profit margins, asking what the impact on 2008 profitability would be where WellPoint had actually lowered its pricing of products entering 2008 and following the higher medical costs in 2007 that WellPoint had experienced which required it to increase its reserves for medical costs at year-end 2007. Defendant DeVeydt responded by saying that he was "not worried about '08, but your point is dead on for '07." Defendant DeVeydt added that "I still feel very confident in our pricing and our renewals."

43.     When questioned by the analyst from UBS about the adequacy of the reserves for medical costs, defendant DeVeydt responded by saying, in pertinent part, that "we've met with the actuaries . . . and . . . we want to ensure that when we go into '08, that we go in with great confidence, that we're not going to fall short."

44.     The analyst from Citigroup asked at what point in 2007 WellPoint knew that fourth quarter 2006 medical costs had increased beyond the levels that WellPoint had reserved for. Defendant DeVeydt responded that "by basically mid February [2007], we had pretty good visibility that we were starting to develop less favorably."

45.     The analyst from Deutsche Bank asked whether WellPoint had factored the slowing economy and its impact on medical cost trends into its 2008 guidance. Defendant DeVeydt responded, saying that "we have backed into our guidance an assumption for a slowdown and specifically, we were very specific about it relative to the National Account business that we had expected. Now the good news is I think our assumptions were conservative and we are actually seeing slightly better than expected results there, which is good."

46.     Defendant Braly ended the Q4 Earnings Conference Call stating that "we had a productive year in 2007 and we're off to a good start for 2008."

47.     On February 21, 2008, Defendants signed and filed with the SEC WellPoint's 2007 Form 10-K. In the MD&A, at pages 40-41, Defendants highlighted the importance of "profitable enrollment growth" in achieving 15% growth in earnings per share, and stated their belief that WellPoint's geographic diversity reduced the impact of economic pressures on WellPoint's earnings and provided WellPoint with "increased opportunities for growth." Defendants also stated, at page 63, that they continually monitor and adjust claims liability and benefit expense based on subsequent paid claims activity and that because WellPoint's business is "primarily short tailed," page 66, incurred claims are quick to show up and, therefore, defendants can quickly assess and adjust the adequacy of the Company's reserves for medical costs.

48.     This 2007 Form 10-K was incorporated into Plan documents.

49.     At no place in the 2007 Form 10-K did Defendants correct any of their false and misleading statements they had made or disclose that WellPoint had experienced in 2008, to date, a significant rise in medical costs, an unprofitable shift in new enrollment to Self-Funded members, and had priced its 2008 products at less profitable levels, and that as a result of these adverse material facts, the guidance that Defendants had given the market on January 23, 2008 was no longer viable.

50.     The statements referenced above were materially false and misleading because Defendants knew, but failed to disclose, or recklessly disregarded, at the time they made their statements that:

(a)     WellPoint was experiencing a significant increase in medical costs commencing January 1, 2008 to the extent that defendants had no basis in fact which supported their earnings guidance or their benefit expense ratio guidance.  In fact, Defendants knew that earnings for Q1 2008 would likely be in the range of $1.16 to $1.26 per share, rather than the $1.44 per share Defendants told the market on January 23, 2008.  Defendants knew of the significant rise in medical costs on a real-time basis in 2008, in part, as Q4 2007 medical claims came in for processing and payment.  For example, commencing January 1, 2008, Defendants experienced a significant rise in oncology and other medical claims.  Defendants also admitted on the March 10, 2008 Conference Call, that they knew, at the outset of 2008, that WellPoint's claims cycle time (the time between date of service and date of claim payment) had slowed considerably.  Thus, Defendants knew on January 23, 2008, that there were a significant number of claims from Q4 2007, and earlier, that had been incurred but had not yet been paid.  Defendants did not factor these claims into their calculation of medical costs for 2008.  Thus, Defendants, despite their statements to the contrary on January 23, 2008, had not properly factored in the actual medical costs and trends in medical costs that WellPoint had been and was experiencing, including costs in WellPoint's senior medical advantage and commercial businesses.  Indeed, as defendants Braly and DeVeydt admitted in the March 10, 2008 Conference Call, there were existing adverse trends that they did not factor into their January 23, 2008 guidance;

(b)     WellPoint's reserves for medical costs were understated, in part, because, the claims incurred in 2007 were significantly higher than the reserves established at December 31, 2007, for those claims and WellPoint would be required at the beginning of 2008 to add $175

million to the reserve, $125 million of which would negatively impact WellPoint's profitability. Defendants knew that WellPoint's medical cost reserves were understated at January 23, 2008, as admitted by Defendants on the March 10, 2008 Conference Call, in part because Defendants knew, as alleged in subparagraph (a) above, that there were incurred medical costs which had not been paid and Defendants did not factor those costs into their reserve calculations;

(c)     WellPoint's enrollment growth was heavily weighted toward self-funded products and members which were substantially less profitable for WellPoint. At January 1, 2008, Defendants knew that the Connecticut membership would be operating under self-funded programs through February 29, 2008, at which time WellPoint would endeavor to renegotiate a contract on reasonable terms. As Defendants later admitted on the March 10, 2008 Conference Call, "half of the reduction in membership guidance relates to the Connecticut medicaid ASO contract." Thus, Defendants not only knew that these Connecticut members would revert to less profitable "self-funded" status but that there was no assurance they would not lose these 144,000 members after February 29, 2008, thereby negatively affecting WellPoint's membership levels. Defendants also knew, on a real time basis, that the large majority of new enrollees coming on board in 2008, at the time they became enrolled, were in Self-Funded programs. Defendants further knew that WellPoint had experienced a 5.9% rise in Self-Funded members throughout 2007 and that there was no basis in fact for this trend to change in 2008, particularly in light of existing economic factors;

(d)     WellPoint was not achieving significant new enrollment of Fully-Insured members in 2008 and Defendants knew this adverse material fact on a real time basis. Defendants also knew that growth in Medicare Advantage was greatly slowed and that WellPoint

was suffering declines in enrollment in Small Group and Individual membership. Defendants

further knew that WellPoint had experienced a decline in Fully-Insured members throughout

2007 and that there was no basis in fact for this trend to change in 2008, particularly in light of

existing economic factors. In fact, the failure to achieve any significant growth in Fully-Insured

members in 2008, to date, confirmed the 2007 trend in membership type.    This failure

exacerbated the financial impact of the growth in less profitable Self-Funded members and had

an exponential adverse impact on WellPoint's earnings throughout 2008; and

(e)    WellPoint was being adversely impacted by economic factors which were

not neutralized by WellPoint's geographic diversity and to an extent greater than defendants had

factored into their 2008 guidance. At the outset of the Class Period, for example, Defendants

knew that the Medi-Cal premium would be reduced as of July 1, 2008, and that because Medi-

Cal was WellPoint's largest State Sponsored market, with approximately 1.2 million members,

the adverse impact on WellPoint's profitability would be significant.

## THE LAW UNDER ERISA

51.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), provides, in pertinent part, that a civil

action may be brought by a participant for relief under ERISA § 409, 29 U.S.C. § 1109.

52.    ERISA § 409(a), 29 U.S.C. § 1109(a), "Liability for Breach of Fiduciary Duty,"

provides, in pertinent part, that any person who is a fiduciary with respect to a plan who breaches

any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be

personally liable to make good to such plan any losses to the plan resulting from each such

breach, and to restore to such plan any profits of such fiduciary which have been made through

use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

53.     ERISA § 404(a)(l)(A) and (B), 29 U.S.C. § 1104(a)(l)(A) and (B), provides, in pertinent part, that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the Participants and beneficiaries, for the exclusive purpose of providing benefits to Participants and their beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

54.     These fiduciary duties under ERISA § 404(a)(l)(A) and (B) are referred to as the duties of loyalty, exclusive purpose and prudence, and are the "highest known to the law." They entail, among other things:

(a)     The duty to conduct an independent and thorough investigation into, and continually to monitor, the merits of all the investment alternatives of a plan, including in this instance the Plan, which invested in WellPoint Stock, to ensure that each investment is a suitable option for the Plan;

(b)     The duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the Participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the Plan's sponsor; and

(c)     A duty to disclose and inform, which encompasses: (i) a negative duty not to misinform; (ii) an affirmative duty to inform when the fiduciary knows or should know that

silence might be harmful; and (iii) a duty to convey complete and accurate information material to the circumstances of Participants and beneficiaries.

55.     ERISA § 405(a), 29 U.S.C. § 1105(a), "Liability for breach by co-fiduciary," provides, in pertinent part, that ". . . [i]n addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 404(a)(l), 29 U.S.C. § 1104(a)(l), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

56.     Plaintiff therefore brings this action under the authority of ERISA § 502(a)(2) for Plan-wide relief under ERISA § 409(a) to recover losses sustained by the Plan arising out of the breaches of fiduciary duties by Defendants for violations under ERISA § 404(a)(l) and ERISA § 405(a).

## DEFENDANTS' FIDUCIARY STATUS

57.     ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan." § 402(a)(l), 29 U.S.C. § 1102(a)(l).

58.     During the Class Period, all of Defendants acted as fiduciaries of the Plan pursuant to § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A) and the law interpreting that section.

As outlined herein, Defendants all had discretionary authority and control with respect to the management of the Plan and/or the management or disposition of the Plan's investments and assets, and/or had discretionary authority or responsibility for the administration of the Plan.

59.     During the Class Period, Defendants' direct and indirect communications with the Plan's Participants included statements regarding investments in Company Stock. Upon information and belief, these communications included, but were not limited to, SEC filings, annual reports, press releases, Company presentations made available to the Plan's Participants via the Company's website and Plan-related documents which incorporated and/or reiterated these statements. Defendants also acted as fiduciaries to the extent of this activity.

60.     In addition, under ERISA, in various circumstances, non-fiduciaries who knowingly participate in fiduciary breaches may themselves be liable. To the extent any of the Defendants are held not to be fiduciaries, they remain liable as non-fiduciaries who knowingly participated in the breaches of fiduciary duty described below.

## CAUSES OF ACTION

### COUNT I

61.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

62.     At all relevant times, as alleged above, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

63.     As alleged above, Defendants were responsible, in different ways and to differing extents, for the selection and monitoring of the Plan's investment options, including the option of Company Stock.

64.     Under ERISA, fiduciaries who exercise discretionary authority or control over management of a plan or disposition of a plan's assets are responsible for ensuring that investment options made available to participants under a plan are prudent. Furthermore, such fiduciaries are responsible for ensuring that assets within the plan are prudently invested. Defendants were responsible for ensuring that all investments in WellPoint Stock in the Plan were prudent and that such investment was consistent with the purpose of the Plan. Defendants are therefore liable for losses incurred as a result of such investments being imprudent.

65.     A fiduciary's duty of loyalty and prudence requires it to disregard plan documents or directives that it knows or reasonably should know would lead to an imprudent result or would otherwise harm plan participants or beneficiaries. ERISA § 404(a)(l)(D), 29 U.S.C. § 1104(a)(l)(D). Thus, a fiduciary may not blindly follow plan documents or directives that would lead to an imprudent result or that would harm plan participants or beneficiaries, nor may it allow others, including those whom they direct or who are directed by the plan, including plan trustees, to do so.

66.     Moreover, during the Class Period, despite their knowledge of the imprudence of the investment, Defendants failed to take any meaningful steps to prevent the Plan, and indirectly the Plan's Participants and beneficiaries, from suffering losses as a result of the Plan's investment in WellPoint Stock. Further, given that such a high concentration of the assets of the Plan was invested in the stock of a single company (WellPoint), Defendants were obliged to have in place some financial strategy to address the extreme volatility of single equity investments. All categories of Defendants failed to implement any such strategy.

67.     The fiduciary duty of loyalty also entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with single-minded devotion to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

68.     Defendants breached their co-fiduciary obligations by, among their other failures: knowingly participating in, or knowingly undertaking to conceal, the failure to prudently and loyally manage the Plan's assets with respect to offering Company Stock as an investment option in the Plan; enabling Defendants' failure to prudently manage the Plan's assets with respect to the Plan's investments; and, having knowledge of the failure to prudently manage the Plan's assets, yet not making any effort to remedy the breach.

69.     Specifically, at least some of the Defendants had actual knowledge of WellPoint's corporate malfeasance and questionable reporting and business. In addition, in light of their high-ranking positions as high ranking officers at the Company, Defendants had/should have had constructive knowledge of these activities.

70.     Despite this knowledge, Defendants participated in each other's failures to prudently manage the Plan's assets and knowingly concealed such failures by not informing Participants that the Plan's holdings of WellPoint Stock were not being prudently managed. They also failed to remedy their mutual breaches of the duty to prudently manage the Plan's investment in WellPoint Stock, despite inarguably having knowledge of such breaches.

71.     Furthermore, through their own failure to prudently and loyally manage the Plan's investment in WellPoint Stock, or to undertake any genuine effort to investigate the merits of such investment, or to ensure that other fiduciaries were doing so, Defendants enabled their

- 23 -

co-fiduciaries to breach their own independent duty to prudently and loyally manage the Plan's investment in WellPoint Stock.

72.     As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's other Participants and beneficiaries, lost a significant portion of their investments meant to help Participants save for retirement Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT II

73.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

74.     At all relevant times, as alleged above, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

75.     As alleged above, the scope of Defendants' fiduciary duties and responsibilities included disseminating Plan documents and information to Participants regarding the Plan and assets of the Plan.  In addition, Defendants had a duty to provide Participants with information they possessed that they knew or should have known, would have an extreme impact on the Plan.

76.     The duty of loyalty under ERISA requires fiduciaries to speak truthfully to Participants, not to mislead them regarding the Plan or the Plan's assets, and to disclose information that Participants need in order to exercise their rights and interests under the Plan. This duty to inform Participants includes an obligation to provide Participants and beneficiaries of the Plan with complete and accurate information, and to refrain from providing false information or concealing material information regarding the Plan's investment options such that

Participants can make informed decisions with regard to investment options available under the Plan, this duty applies to all of the Plan's investment options, including investment in WellPoint Stock.

77.     Because a substantial percentage of the Plan's assets were invested in WellPoint Stock, and Defendants chose to invest overwhelmingly in WellPoint Stock, such investment carried with it an inherently high degree of risk.  This inherent risk made Defendants' duty to provide complete and accurate information particularly important with respect to Company Stock.

78.     Specifically, WellPoint, through its officers and directors issued a multitude of false and misleading statements through SEC filings and press releases regarding value of WellPoint Stock and the financial health of the Company.

79.     Upon information and belief, such communications were disseminated directly to all Participants, which incorporated by reference the Company's materially misleading and inaccurate SEC filings and reports furnished by WellPoint, through its officers.  In addition, upon information and belief, the Company communicated directly with all Participants regarding the merits of investing in WellPoint Stock in company-wide and uniform communications, and, yet, in the context of such communications failed to provide complete and accurate information regarding WellPoint Stock as required by ERISA.

80.     In addition, Defendants were responsible for providing Participants in the Plan with investment education and communication.  Defendants, however, failed to disclose any information to Plan Participants regarding WellPoint's deceitful business practices and how these activities adversely affected Company stock as a prudent investment option under the Plan.

Defendants thus breached their duty to provide Participants with complete and accurate information necessary for making informed investment decisions with regard to investment options under the Plan.

81.     Defendants breached their duty to inform Participants by failing to provide complete and accurate information regarding WellPoint Stock, making material misrepresentations about the Company's financial condition, and, generally, by conveying inaccurate information regarding the soundness of WellPoint Stock and the prudence of investing retirement contributions in the Company's stock.

82.     These failures were particularly devastating to the Plan and the Participants, as a significant percentage of the Plan's assets were invested in WellPoint Stock during the Class Period and, thus, the stock's precipitous decline had an enormous impact on the value of Participants' retirement assets.

83.     In addition, WellPoint and the other Defendants knew or should have known that information they possessed regarding the true condition of WellPoint would have an extreme impact on the Plan. Yet, in violation of their fiduciary duties, these Defendants failed to provide Participants with this crucial information.

84.     As a consequence of the failure of Defendants to satisfy their disclosure obligations under ERISA, Participants lacked sufficient information to make informed choices regarding investment of their retirement savings in WellPoint Stock, or to appreciate that under the circumstances known to the fiduciaries, but not known by Participants, WellPoint Stock was an inherently unsuitable and inappropriate investment option for their Plan accounts. Had accurate information been provided, Participants could have protected themselves against losses

accordingly, and consequently, Participants relied to their detriment on the incomplete and inaccurate information provided by Defendants in their fiduciary communications and failures thereof.

85.     As a consequence of Defendants' breaches of fiduciary duty alleged in this Count, the Plan suffered tremendous losses. If these Defendants had discharged their fiduciary duties to prudently invest the Plan's assets, the losses suffered by the Plan would have been minimized or avoided. Therefore, as a direct and proximate result of the breaches of fiduciary and co-fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the other Class members, lost millions of dollars of retirement savings.

86.     Pursuant to ERISA §§ 409 and 502(a), 29 U.S.C. §§ 1109(a) and 1132(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## COUNT III

87.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

88.     At all relevant times, as alleged above, WellPoint and Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). At all relevant times, as alleged above, the scope of the fiduciary responsibilities of WellPoint and Defendants included the responsibility to appoint, evaluate, and monitor other fiduciaries. The duty to monitor entails both giving information to and reviewing the actions of the monitored fiduciaries. The monitoring fiduciaries, WellPoint and Defendants had the duty to:

(a)     Ensure that the appointed Plan fiduciaries possess the needed credentials and experience, or use qualified advisors and service providers to fulfill their duties. They must

be knowledgeable about the operations of the Plan, the goals of the Plan, as noted above, and the behavior of the Plan's Participants;

      (b)    Ensure that the appointed Plan fiduciaries are provided with adequate financial resources to do their job;

      (c)    Ensure that the appointed Plan fiduciaries have adequate information to do their job of overseeing the Plan's investments;

      (d)    Ensure that the appointed Plan fiduciaries have ready access to outside, impartial advisors when needed;

      (e)    Ensure that the appointed Plan fiduciaries maintain adequate records of the information on which they base their decisions and analysis with respect to the Plan's investment options; and

      (f)    Ensure that the appointed Plan fiduciaries report regularly to the Company, the Company must then review, understand, and approve the conduct of the hands-on fiduciaries.

      89.    Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.  In addition, a monitoring fiduciary must provide the monitored fiduciaries with complete and accurate information in their possession that they know or reasonably should know that the monitored fiduciaries must have in order to prudently manage the plan and the plan assets.

90.     WellPoint and Defendants breached their fiduciary monitoring duties by, among other things, (a) failing to ensure that the appointed Plan fiduciaries were given adequate information about the Company's business problems alleged above, which made Company Stock an imprudent investment, which was necessary for them to perform their duties of overseeing the Plan's investments, and (b) failing to ensure that the monitored fiduciaries completely appreciated the huge risk of significant investment by rank and file employees in an undiversified employer stock fund which was made up primarily of Company Stock, an investment that was imprudent and inherently subject to significant downward movements, especially here where the stock was artificially inflated by non-public corporate malfeasance and illicit activities.

91.     WellPoint and Defendants also breached this duty by not properly disclosing information, that they knew or should have known, about the Company's improper business practices to the Trustee. The Trustee is responsible for investing and managing assets of the Plan. However, in doing so, the Trustee shall be subject to the direction and guidance of WellPoint.

92.     WellPoint and the other Defendants knew or should have known that the fiduciaries they were responsible for monitoring were (a) imprudently allowing the Plan to continue offering WellPoint Stock as an investment alternative for the Plan, and (b) continuing to invest the assets of the Plan in WellPoint Stock when it no longer was prudent to do so. Despite this knowledge, WellPoint and Defendants failed to take action to protect the Plan, and concomitantly the Plan's Participants, from the consequences of these fiduciaries' failures.

93.     WellPoint and Defendants are liable as co-fiduciaries because they knowingly participated in each other's fiduciary breaches as well as those by the appointed Plan fiduciaries, they enabled the breaches by these Defendants, and they failed to make any effort to remedy these breaches, despite having knowledge of them.

94.     As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's other Participants and beneficiaries, lost a significant portion of their investments meant to help Participants save for retirement.

95.     Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C., § 1109(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT IV

96.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

97.     At all relevant times, as alleged above, all Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

98.     ERISA § 404(a)(l)(A), 29 U.S.C. § 1104(a)(l)(A), imposes on a plan fiduciary a duty of loyalty, that is, a duty to discharge his/her duties with respect to a plan solely in the interest of the Participants and beneficiaries and for the exclusive purpose of providing benefits to Participants and beneficiaries.

99.     Given the allegations listed above, Defendants clearly placed the interests of themselves and the Company, as evidenced by the longstanding artificial inflation of Company Stock, before the interests of the Plan and its Participants and beneficiaries.  These conflicts of

interest put Defendants in the inherently problematic position of having to choose between their own interests as directors, officers, executives (and WellPoint stockholders), and the interests of the Plan's Participants and beneficiaries, in whose interests Defendants were obligated to loyally serve with an "eye single."

100.    Defendants breached their duty to avoid conflicts of interest and to promptly resolve them by, *inter alia*: failing to engage independent fiduciaries who could make independent judgments concerning the Plan's investment in WellPoint Stock; failing to notify appropriate federal agencies, including the SEC of the facts and transactions which made WellPoint Stock an unsuitable investment for the Plan; failing to take such other steps as were necessary to ensure that Participants' interests were loyally and prudently served; with respect to each of these above failures, doing so in order to prevent drawing attention to the Company's inappropriate practices; and by otherwise placing the interests of the Company and themselves above the interests of the Participants with respect to the Plan's investment in Company Stock.

101.    Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT V

102.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

103.    ERISA § 405(a), 29 U.S.C. § 1105, imposes liability on a fiduciary, in addition to any liability which he may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if (a) he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such

act or omission is a breach; (b) he fails to comply with § 1104(a)(l) in the administration of his specific responsibilities which give rise to his status as a fiduciary, by enabling such other fiduciary to commit a breach; or (c) he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

104.    As alleged herein, WellPoint, through its officers and employees withheld material information from the Plan's Participants and provided misleading disclosures, by the conduct set forth above, and profited from such practices, and, thus, knowledge of such practices is imputed to these Defendants as a matter of law.  In addition, as alleged herein on information and belief, WellPoint and the other Defendants participated in and/or knew about the Company's misrepresentations regarding the Company's financial condition.  Thus, these Defendants as well had knowledge at all relevant times of the factual matters pertaining to the imprudence of WellPoint Stock as an investment for the Participants' retirement assets.

105.    Despite this knowledge, Defendants knowingly participated in their co-fiduciaries' failures to prudently and loyally manage the Plan's investment and holding of WellPoint Stock during the Class Period.  They did so by themselves making imprudent and disloyal decisions respecting the Plan's investment in WellPoint Stock in the manner alleged herein in violation of ERISA § 405(a)(l)(A).  In addition, these same Defendants failed to undertake any effort to remedy their co-fiduciaries' and one-another's failures to prudently and loyally manage the Plan's investment in WellPoint Stock despite knowing such failures were breaches of fiduciary duty under ERISA. Instead, they allowed the harm to continue and contributed to it throughout the Class Period in violation of ERISA § 405(a)(l)(C).

106.    In further violation of ERISA § 405(a)(l)(C), Defendants also knew that inaccurate and incomplete information had been provided to Participants, yet, they failed to undertake any effort to remedy this breach by ensuring that accurate disclosures were made to Participants and the market as a whole.  Instead, they compounded the problem by downplaying the significance of WellPoint's problems and further concealing such practices from Participants and the market as a whole.

107.    In addition, Defendants enabled the imprudent asset management decisions of any and all other Defendant -- including any appointed Plan fiduciaries -- who lacked knowledge of the circumstances rendering the stock imprudent, by failing to provide such persons with complete and accurate information regarding the stock, or to the extent all such persons possessed the information, by failing to ensure that they appreciated the true risks to the Plan caused by the Company's improper practices, so that these other Defendants could effectively discharge their obligation to prudently and loyally manage the Plan's investment in WellPoint Stock.  In so doing, these Defendants breached ERISA § 405(a)(l)(B).

108.    Further, through their failure to properly and effectively monitor and remove those fiduciaries whose performance was inadequate as alleged above, Defendants enabled these appointed Plan fiduciaries' imprudent management of the WellPoint Stock in the Plan.

109.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's other Participants and beneficiaries, lost a significant portion of their retirement investment.

110.    Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT VI

111.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

112.    To the extent that WellPoint is found not to have been a fiduciary or to have acted in a fiduciary capacity with respect to the conduct alleged to have violated ERISA, WellPoint knowingly participated in the breaches of those Defendants who were fiduciaries and acted in a fiduciary capacity and as such is liable for equitable relief as a result of participating in such breaches.

113.    WellPoint benefited from the breaches by discharging its obligations to make contributions to the Plan in amounts specified by contributing WellPoint Stock to the Plan while the value of the stock was inflated as the result of the breaches of fiduciary duty alleged herein and as a result of WellPoint providing the market with materially misleading statements and omissions.  Accordingly, WellPoint may be required to disgorge this benefit or a constructive trust should be imposed on treasury shares of WellPoint Stock which would have been contributed to the Plan, but for WellPoint's participation in the foregoing breaches of fiduciary duty.

## CAUSATION

114.    The Plan suffered millions of dollars in losses in plan benefits because substantial assets of the Plan were imprudently invested or allowed to be invested by Defendants in

WellPoint Stock during the Class Period, in breach of Defendants' fiduciary duties. These losses to the Plan were reflected in the diminished account balances of the Plan's Participants.

115.    Defendants are responsible for losses in Plan benefits caused by the Participants' direction of investment in WellPoint Stock, because Defendants failed to take the necessary and required steps to ensure effective and informed independent participant control over the investment decision-making process, as required by ERISA § 404(c), 29 U.S.C. § 1104(c), and the regulations promulgated thereunder. Defendants concealed material, non-public facts from Participants, and provided inaccurate, incomplete and materially misleading information to them regarding the true health and ongoing profitability of the Company, thereby misrepresenting the Company's soundness as an investment vehicle. As a consequence, Participants could not exercise independent control over their investments in WellPoint Stock, and Defendants remain liable under ERISA for losses caused by such investment.

116.    Defendants are also responsible for all losses in Plan benefits caused by the investment of the Plan's Company Contributions in WellPoint Stock during the Class Period, as Defendants controlled the investment, and the investment was imprudent.

117.    Had Defendants properly discharged their fiduciary and/or co-fiduciary duties, including the provision of full and accurate disclosure of material facts concerning investment in WellPoint Stock, eliminating such Company Stock as an investment alternative when it became imprudent, and divesting the Plan from its holdings of WellPoint Stock when maintaining such an investment became imprudent, the Plan would have avoided a substantial portion of the losses that it suffered.

118.    Also, reliance is presumed in an ERISA breach of fiduciary duty case. Nevertheless, to the extent that reliance is an element of the claim, Plaintiff relied to his detriment on the misstatements and omissions that Defendants made to Plan Participants.

## REMEDY FOR BREACHES OF FIDUCIARY DUTY

119.    Defendants breached their fiduciary duties in that they knew or should have known the facts as alleged above, and therefore knew or should have known that the Plan's assets should not have been invested in WellPoint Stock during the Class Period.    As a consequence of Defendants' breaches, the Plan suffered significant losses.

120.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109.  Section 409 requires "any person who is a fiduciary. . . who breaches any of the . . . duties imposed upon fiduciaries . . . to make good to such plan any losses to the plan . . . ."  Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate . . . ."

121.    With respect to calculation of the losses to a plan, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the Participants and beneficiaries in the plan would not have made or maintained their investments in the challenged investment and, where alternative investments were available, that the investments made or maintained in the challenged investment would have instead been made in the most profitable alternative investment available.  In this way, the remedy restores the values of the Plan's assets to what they would have been if the Plan had been, properly administered.

122.    Plaintiff and the Class are therefore entitled to relief from Defendants in the form of: (a) a monetary payment to the Plan to make good to the Plan the losses to the Plan resulting

from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as provided by ERISA § 409(a), 29 U.S.C. § 1109(a); (b) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a) and 502(a)(2-3), 29 U.S.C. §§ 1109(a) and 1132(a)(2-3); (c) reasonable attorney fees and expenses, as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law; (d) taxable costs; (e) interest on these amounts, as provided by law; and (f) such other legal or equitable relief as may be just and proper.

123.    Under ERISA, each Defendant is jointly and severally liable for the losses suffered by the Plan in this case.

## ERISA SECTION 404(c) DEFENSE INAPPLICABLE

124.    ERISA § 404(c) is an affirmative defense that provides a limited exception to fiduciary liability for losses that result from Participants' exercise of control over investment decisions. In order for § 404(c) to apply, Participants must in fact exercise "independent control" over investment decisions, and the fiduciaries must otherwise satisfy the procedural and substantive requirements of ERISA § 404(c), 29 U.S.C. § 1104(c) and the regulations promulgated under it.

125.    Those provisions were not complied with here as, among other reasons, instead of taking the necessary steps to ensure effective participant control by complete and accurate material information disclosure, Defendants did exactly the opposite. As a consequence, Participants in the Plan did not have informed control over the portion of the Plan's assets that were invested in WellPoint Stock as a result of their investment directions, and Defendants remained entirely responsible for losses that result from such investment.

126.    Because ERISA § 404(c) does not apply here, Defendants' liability to the Plan, Plaintiff and the Class for relief stemming from Participants' decisions to invest contributions in WellPoint Stock is established upon proof that such investments were or became imprudent and resulted in losses in the value of the assets in the Plan during the Class Period.

127.    Furthermore, under ERISA, fiduciaries -- not Participants -- exercise control over the selection of investment options made available to Participants.  Thus, whether or not Participants are provided with the ability to select among different investment options, and whether or not Participants exercised effective control over their investment decisions (which was not the case here), liability attaches to the fiduciaries if an imprudent investment is selected by the fiduciaries and presented as an option to Participants, and as a result of such action the Plan suffers a loss.  Because this is precisely what occurred in this case, Defendants are liable for the losses incurred by the Plan.

128.    Finally, Defendants remain liable for Plan losses that pertain to WellPoint Stock acquired by the Plan with employer contributions, as Participants did not exercise any control.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for:

A.    A Declaration that Defendants, and each of them, have breached their ERISA fiduciary duties to the Participants;

B.    A Declaration that Defendants, and each of them, are not entitled to the protection of ERISA § 404(c)(l)(B), 29 U.S.C. § 1104(c)(l)(B);

C.    An Order compelling Defendants to make good to the Plan all losses to the

Plan resulting from Defendants' breaches of their fiduciary duties, including losses to the Plan resulting from imprudent investment of the Plan's assets, and to restore to the Plan all profits Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the Participants would have made if Defendants had fulfilled their fiduciary obligations;

D.    Imposition of a Constructive Trust on any amounts by which any Defendant was unjustly enriched at the expense of the Plan as the result of breaches of fiduciary duty;

E.    An Order enjoining Defendants, and each of them, from any further violations of their ERISA fiduciary obligations;

F.    An Order requiring Defendants to appoint one or more independent fiduciaries to participate in the management of the Plan's investment in WellPoint Stock;

G.    Actual damages in the amount of any losses the Plan suffered, to be allocated among the Participants' individual accounts as benefits due in proportion to the accounts' diminution in value;

H.    An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

I.    An Order awarding attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

J.    An Order for equitable restitution and other appropriate equitable monetary relief against Defendants.

Dated:  April 15, 2008

**DELANEY & DELANEY LLC**

By: _____
Kathleen A. DeLaney (#18604-49)
3646 North Washington Blvd.
Indianapolis, IN  46205
Telephone:  (317) 920-0400
Facsimile: (317) 920-0404
Email: kathleen@delaneylaw.net

**GAINEY & MCKENNA**
Thomas J. McKenna
295 Madison Avenue, 4th Floor
New York, New York 10017
Telephone: (212) 983-1300
Email: tjmckenna@gaineyandmckenna.com

*Attorneys for Plaintiff*