UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION


| | |
|---|---|
| Paul West, On Behalf Of Himself and All Others Similarly Situated, ) ) ) Plaintiffs, ) ) vs. ) ) WellPoint, Inc.; Anthem Insurance ) Companies, Inc.; Angela F. Braly; Sheila P. ) Burke; Larry C. Glasscock; Jane E. Pisano; ) Donald W. Riegle, Jr.; William J. Ryan; ) Jackie M. Ward; Randal A. Brown; David C.) Colby; Cynthia S. Miller; Wayne S. ) DeVeydt; and John Does 1-10, ) Defendants. | 1:08-cv-0486-SEB-TAB |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

This is a class action brought on behalf of the WellPoint 401(k) Plan (the "Plan"),[1]

pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132,

*et. seq.*  Plaintiffs are participants in the Plan all of whom held WellPoint, Inc.

("WellPoint") shares in their individual Plan accounts from January 24, 2007 to the

present (the "Class Period").

Plaintiffs allege that defendants were fiduciaries of the Plan and breached various

---

[1]According to the Amended Complaint, the Plan was titled the Anthem 401(k) Long-Term Savings Investment Plan prior to December 31, 2005.

fiduciary duties they owed Plaintiffs, in violation of ERISA. Compl. ¶ 3. Specifically,

they allege the following:

> Count I: Defendants breached their fiduciary duties to the Plan and Plan
> participants by failing to prudently and loyally manage the Plan's
> investment in WellPoint securities by (1) continuing to offer WellPoint
> common stock as a Plan investment option when it was imprudent to do so;
> (2) failing to provide complete and accurate information to Plan participants
> regarding WellPoint's financial condition and the prudence of investing in
> WellPoint stock; and (3) maintaining the Plan's pre-existing investment in
> WellPoint stock when the stock was no longer a prudent investment for the
> Plan.
>
> Count II: Defendants failed to avoid or ameliorate inherent conflicts of
> interests, resulting in a failure to function as independent fiduciaries.
>
> Count III: Defendants failed to monitor other persons to whom
> management/administration of Plan assets was delegated, despite knowing
> that those persons were imprudently allowing the Plan to offer WellPoint
> stock as an investment option when it was imprudent to do so.

Id. ¶¶ 8-10. Plaintiffs seek to recover losses to the Plan for which they allege Defendants

are personally liable pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and

1132(a)(2). They also seek other equitable relief from Defendants under ERISA §

502(a)(3), 29 U.S.C. § 1132(a)(3). Plaintiffs filed their Consolidated Amended

Complaint on August 26, 2008. [Docket No. 61]. Before the Court presently is

Defendants' Rule 12(b)(6) motion to dismiss that complaint, for failure to state a claim

upon which relief may be granted. [Docket No. 63]. For the reasons stated herein,

Defendants' motion is GRANTED.

## I.     Factual Background

The facts below are taken from the Amended Complaint and for purposes of this

2

motion, are accepted as true.  See <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949-50 (2009).

**A.     The Parties**

As mentioned above, Plaintiffs are individual participants in the Plan with WellPoint shares in their individual Plan accounts during the proposed Class Period beginning on January 24, 2007 and continuing to the present.  Compl. ¶¶ 3, 18-25.

Defendant WellPoint, an Indiana corporation, is one of the largest health benefits companies in the United States in terms of commercial membership.  Through its subsidiaries, WellPoint is licensed to conduct insurance operations in all fifty states.  <u>Id.</u> ¶ 27.  ATH Holding Company, a wholly-owned WellPoint subsidiary, is the Plan's sponsor. <u>Id.</u> ¶ 28.

Defendant Anthem Insurance Companies, Inc. ("Anthem") is the Plan's administrator.  Compl. ¶¶ 28-29.  Anthem is also a wholly-owned subsidiary of WellPoint.  Compl. ¶ 28.  Plan administration is delegated to Anthem's "Pension Committee." Compl. ¶ 29.  Plaintiffs allege that Anthem was both the administrator and a fiduciary of the Plan given that it "exercised discretionary authority with respect to the management and administration of the Plan and/or management and disposition of Plan assets."  Compl. ¶ 82.  Specifically, the Plan Document vested in the Board of Anthem Insurance "the sole authority to appoint and remove the Pension Committee and to amend or terminate, in whole or in part, this Plan or the Trust." <u>See</u> Ex. B, Plan Document § 8.1, WLP000151.  Anthem's Board had the authority to amend the Plan so long as those amendments were for the benefit of the Plan's participants.  Compl. ¶ 84 (citing Ex. B,

Plan Document § 10.1, WLP000156).

The Complaint names the following four Pension Committee members as defendants: Randal A. Brown, David C. Colby, Cynthia S. Miller, and Wayne S. DeVeydt. Compl. ¶¶ 43-47. The Plan provides that the Pension Committee shall "have the sole responsibility for the administration of this Plan, which responsibility is specifically described in this Plan and the Trust." Compl. ¶ 91 (citing Ex. B, Plan Document § 8.1, WLP000151; Ex. C, Trust Agreement at 1, WLP000270). The Plan Document assigns to the Pension Committee the following powers and duties:

> (a) discretion to construe and interpret the Plan, decide all questions of eligibility and determine the amount, manner and time of payment of any benefits hereunder;
> (b) to prescribe procedures to be followed by Participants, Former Participants or Beneficiaries filing applications for benefits;
> (c) to prepare and distribute information explaining the Plan;
> (d) to receive from the Employer and from Participants, Former Participants and Beneficiaries such information as shall be necessary for the proper administration of the Plan;
> (e) to furnish the Employer, upon request, such annual reports with respect to the administration of the Plan as are reasonable and appropriate;
> (f) to receive, review and keep on file (as it deems convenient or proper) reports of the financial condition, and of the receipts and disbursements, of the Trust Fund from the Trustees;
> (g) to appoint or employ advisors including legal and actuarial counsel to render advice with regard to any responsibility of the Pension Committee under the Plan or to assist in the administration of the Plan.

Compl. ¶ 92 (citing Ex. B, Plan Document § 8.6, WLP000153-154). The Pension Committee also was empowered to adopt necessary rules and possessed "exclusive

authority and discretion to select the investment funds . . . available for investment under the Plan." Compl. ¶¶ 93-94.

The Amended Complaint also includes as defendants the following WellPoint directors ("Director Defendants"): Angela F. Braly, Sheila P. Burke, Larry C. Glasscock, Jane G. Pisano, Donald W. Riegle, William J. Ryan, and Jackie M. Ward. Compl. ¶¶ 32-42. Burke, Pisano, Riegle, Ryan, and Ward, as members of WellPoint's Compensation Committee, were responsible for discharging the Board of Directors' responsibilities related to WellPoint's benefits to its employees. Id. Plaintiffs allege that these Director Defendants were responsible for appointing, monitoring, and removing members of the Pension Committee and the Compensation Committee and were empowered to make amendments to the Plan so long as those amendments were for the benefit of the Plan's participants. Compl. ¶ 88 (citing Ex. B, Plan Document § 10.1, WLP000156). The Complaint recites that each of the Director Defendants exercised discretionary authority with respect to the Plan by determining or participating in decisions about the substantive content of WellPoint SEC filings which were incorporated by reference into the SPDs, Prospectus and Form S-8 registration statements and were intended to communicate necessary information to Plan participants. Compl. ¶ 89.

Plaintiffs also sue unknown John Doe Defendants 1-10, which category of defendants includes "other individuals, including members of the Pension Committee, directors of WellPoint, Inc. and/or Anthem Insurance, as well as other Company officers and employees who are or were fiduciaries of [the Plan]." Compl. ¶ 48. These

5

Defendants' identities remain unknown to Plaintiffs at present but will be named and added to this litigation once their identities are determined.  Id.

**B.    The Plan**

WellPoint describes the Plan as having been designed to help the individual participants plan for their retirement.  Compl. ¶ 52.  The Plan was a "defined contribution plan" within the meaning of ERISA § 3(34), 29 U.S.C. §1002(34).  Compl. ¶ 49. Employees are eligible to participate in the Plan immediately upon being hired and permitted to defer up to 60% of their compensation into the Plan.  Compl. ¶¶ 53-55. WellPoint matches one hundred percent of every dollar up to the first 6% that a participant contributes to the Plan.  Compl. ¶ 56.  However, employees must complete one year of service before they become eligible to receive a matching contribution.  Id. All of these matched contributions are paid directly to the Trustee, Vanguard Fiduciary Trust Company.  Compl. ¶¶ 50, 59.

The Plan administrator, Anthem's Pension Committee, is responsible for selecting and monitoring the investment options available under the Plan.  Compl. ¶ 57.  Plan participants direct their investments along with WellPoint's matching contributions to the various investment options.  Compl. ¶ 60.  The WellPoint Stock Fund is one such investment option available to Plan participants.  Compl. ¶ 58.  Plaintiffs allege that, on information and belief, the Plan is authorized to divest assets invested in WellPoint common stock as prudent investment circumstances dictate.  Id.  The Summary Plan Description describes the WellPoint Stock Fund as follows:

The WellPoint Stock Fund invests primarily in WellPoint Stock. The Fund also holds a small portion of Fund Assets in cash or cash equivalents in order to meet daily transaction requirements. Shares will be adjusted for any changes resulting from stock dividends, stock splits and similar changes. Dividends, if any, paid to the Fund are reinvested in the Fund. It is important to be aware that WellPoint Stock is subject to price fluctuations in the stock market. **Because the WellPoint Stock Fund consists of a single security, rather than a diversified portfolio of securities, it is generally considered to be a high risk investment.**

Ex. A, WLP000256 (emphasis in original).

The Plan also includes a discretionary profit-sharing feature, whereby WellPoint may contribute a specific amount to the Plan. This contribution is allocated to participants in proportion to the compensation of each participant to the compensation of all participants for the Plan year. Compl. ¶¶ 63-66.

### C. Events Leading to this Lawsuit

As referenced above, WellPoint is licensed to conduct insurance operations in all fifty states through its subsidiaries. The company is also an independent licensee of the Blue Cross and Blue Shield Association. Compl. ¶ 96.

WellPoint markets two primary types of policies: self-funded and fully insured. Compl. ¶ 98. Under self-funded policies, WellPoint charges a service fee but the employer or policy sponsor reimburses WellPoint for healthcare costs paid out. Id. Under fully-insured policies, WellPoint charges a premium and assumes all or a portion of the healthcare risk. Id. Self-funded policies are less profitable for the company than fully-insured ones. Id. Plaintiffs allege that WellPoint's business shifted toward these self-funded plans in 2006. Compl. ¶ 103. The shift was exacerbated, if not caused, by

rising medical costs, which WellPoint sought to combat by increasing its offers of self-insured programs. Compl. ¶¶ 103-104. As a result of these trends, revenues decreased substantially. Compl. ¶ 106.

At least as early as 2005, WellPoint began expanding its operations through a series of acquisitions of Empire Blue Cross/Blue Shield companies. Compl. ¶ 100. As part of these acquisitions, WellPoint acquired the various information technology systems ("IT systems") affiliated with each entity. Compl. ¶ 108. Prior to and during the Class Period, the lack of integration between these technology systems created significant challenges for the company in its processing and accounting of customer claims, payments, and receipts, ultimately resulting in a failure of operational controls. Compl. ¶ 109. It also impeded WellPoint's marketing department's ability to retain and generate business. Compl. ¶ 119.

Plaintiffs allege, on information and belief, that the internal control failures caused by the unintegrated IT systems also undermined WellPoint's ability to account for expenditures. Compl. ¶ 111. These internal control failures also hindered WellPoint's ability to track trends in medical costs, compromising the company's ability to generate reliable financial forecasts or actuarial estimates. Compl. ¶ 116. Plaintiffs allege that the implications of these failures to monitor and forecast medical costs were recklessly disregarded by WellPoint until the company reached a point of having to decrease its earnings forecast, in March 2008.

According to Plaintiffs, the systems integration problems caused "rampant data

integrity issues," preventing WellPoint's actuarial analysts from receiving accurate information for use in their analyses. Compl. ¶ 112. In addition, WellPoint lacked personnel knowledgeable about the "overall operational and geographical areas of the Company" further complicating the data integrity issues.

In 2005, in response to the challenges posed by the lack of systems integration, WellPoint initiated "The 2010 Strategy." Compl. ¶ 121. According to Plaintiffs, the goal of this plan was to have a single, integrated IT system by 2010, but, by the time the Amended Complaint was filed, none of the systems had been consolidated. Id. Plaintiffs allege that this failure caused substantial delays in claims processing and paying medical providers as was apparent to WellPoint by January 30, 2007. Compl. ¶ 122.

On January 24, 2007 (the date the Class Period began), WellPoint released its financial results for the fourth quarter of 2006, as well as the full year 2006. Compl. ¶ 133. WellPoint's press release included a positive statement by Director Defendant CEO and President Glasscock indicating that WellPoint had introduced several new products in 2006, had achieved "strong growth" in certain business segments, and were "well positioned for future growth." Compl. ¶ 133. Pension Committee Defendant Colby reiterated Glasscock's statements reflecting growth in earnings per share of 22 percent for the year. Colby stated, "We continued to price our products with discipline and significantly reduce administrative costs as a percentage of total revenue. . . . We will continue to deploy our cash flow in a manner that strengthens operations and enhances shareholder value in 2007, and expect to return excess capital to our shareholders through

our share repurchase program."  Compl. ¶ 134.

On February 26, 2007, WellPoint filed its 2006 Form 10-K, reporting strong financial conditions in three of its operating segments.  Compl. ¶ 135.

On April 25, 2007, WellPoint released its financial results for the first quarter of 2007.  In the accompanying press release, Director Defendant Glasscock stated, "We are pleased to report a solid first quarter 2007 with earnings per share that exceeded our prior guidance. . . . We had outstanding commercial enrollment growth in the quarter, adding 586,000 National Account members.  National Account customers continue to be attracted by our superior value proposition."  Compl. ¶ 136.  Director Defendant Braly (who succeeded Glasscock as the company's CEO) stated, "We have seen industry leading membership growth because WellPoint offers customers a unique combination of product breadth, flexibility, and local market presence. . . .  We aspire to transform health care and become the most valued company in our industry by consistently delivering excellent service, the widest range of product choices, and access to the highest quality care at the best value."  Compl. 137.  Pension Committee Defendant Colby noted, "Operating ash flow of $2.0 billion, or 2.5 times net income, was very strong in the first quarter."  Compl. ¶ 138.

On July 25, 2007, WellPoint released its financial results for the second quarter of 2007.  In the company's press release, Defendant Braly stated:

> We continue to demonstrate our ability to consistently deliver
> strong earnings growth while also providing members with new
> benefit options and services that improve the affordability and

> quality of the health care they receive. . . . . As a result of our
> efforts during the first half of the year, we are raising our full year
> earnings guidance to $5.55 per share and continue to target long-term
> annual earnings per share growth of 15 percent. At the same
> time, we continue to expand our efforts to find new solutions for
> those who do not have health insurance in addition to undertaking
> strategic initiatives to reduce growth in health care expenditures,
> increase transparency, and promote improved quality.

Compl. ¶ 139.  Defendant DeVeydt reiterated Braly's positive guidance regarding the

company's performance.  Compl. ¶ 140.

On October 24, 2007, WellPoint released its financial results for the third quarter

of 2007 and provided the following guidance for 2008 in its Form 8-K filed with the SEC.

Braly stated:

> In 2008, we expect continued strong enrollment gains in National
> Accounts to be accompanied by new membership from our
> Medicaid contract awards in South Carolina and Indiana, and
> additional growth in our other commercial and senior businesses.
> . . . While we will release our detailed 2008 financial guidance in
> December, we remain committed to our earnings per share growth
> target of at least 15 percent.

Compl. ¶ 141.

On December 11, 2007, WellPoint issued a press release along with a copy of its

Form 8-K filing with the SEC.  This press release expressed the company's confidence in

its "ability to meet the earnings expectations given in a press release and conference call

on October 24, 2007" and announced WellPoint's earnings guidance for full fiscal year

2008 of $6.41 per share.  Compl. ¶ 142.

On January 23, 2008, WellPoint held its fourth quarter 2007 Earnings Conference

Call with numerous analysts.  Compl. ¶ 145.  During that call, Defendant Braly stated that

WellPoint expected to maintain the $6.41 earnings per share guidance for 2008 and that

reduced membership experienced by the company in 2007 had not impacted that

guidance.  Id.  Defendant DeVeydt acknowledged that WellPoint had experienced a rise

in medical costs in the fourth quarter of 2007, but also made the following statements:

> • "[t]he higher than expected 4Q '07 benefit expense ratio resulted
> from items that generally should not impact 2008";
>
> • "our 2008 benefit expense ratio guidance remains at 81.6% for the
> year, given the strong full-year 2007 operating results";
>
> • "we continue to expect our 2008 medical cost trend to also be less
> than 8%";
>
> • "medical enrollment is now expected to approximate 35.6 million
> members with fully insured membership now expected to be 17.1 million
> and self-funded membership expected to be 18.5 million"; and
>
> • "operating revenue is now expected to total approximately $62.6
> billion."

Compl. ¶ 145.

Defendant DeVeydt denied that there would be any impact on 2008 profitability

caused by lower 2008 product pricing and 2007 higher medical costs, which had caused

the company to increase its reserves for medical costs in the prior year.  Compl. ¶ 146.

He also expressed confidence that the company would not fall short in 2008 reserves for

medical costs.  Compl. ¶ 147.

In response to an analyst's question regarding the time by which WellPoint

recognized that its fourth quarter 2007 medical costs had increased beyond the levels

WellPoint has reserved for, Defendant DeVeydt stated, "By basically mid February [2007], we had pretty good visibility that we were starting to develop less favorably." Compl. ¶ 148.

Defendant DeVeydt also stated that WellPoint had factored into its guidance the slowing economy in 2008; stating, "Now the good news is I think our assumptions were conservative and we are actually seeing slightly better than expected results there, which is good." Compl. ¶ 149.

WellPoint's February 21, 2008, Form 10-K repeated the previously-issued positive guidance and assured investors that the company was continually monitoring claims liability and benefit expense based on subsequent paid claims activity. Compl. ¶ 151. The February 2008 Form 10-K also stated that the company was able to quickly assess and adjust the adequacy of its reserves for medical costs, Id., but was silent with regard to a rise in medical costs, the shift in new enrollment toward self-funded policies, or that WellPoint's 2008 pricing would result in less profitability. Compl. ¶ 152. Plaintiffs allege that, by this time, the guidance that the company had provided for the first quarter and for full year 2008 was unreliable. Compl. ¶ 152.

On March 10, 2008, WellPoint issued a press release entitled, "WellPoint Revises 2008 Earnings Per Share Guidance." Compl. ¶ 153. WellPoint's new guidance indicated that first quarter 2008 earnings per share were expected to be in the range of $1.16 to $1.26, a decrease from the previous guidance of $1.44 per share. Id. The full year earnings per share guidance also decreased from $6.41, to a range of $5.76 to $6.01. Id.

Director Defendant Braly attributed these revised reduced earnings to "higher than expected medical costs, lower than expected fully ensured enrollment and, to a lesser extent, the changing economic environment in which we are operating." Id. The press release included the following statement:

> The revision in full year 2008 earnings guidance is primarily attributable to the following areas:
>
> • Higher Than Expected Medical Costs. The Company incurred higher-than-expected medical costs during the first two months of 2008 and has revised its full year outlook for Individual and Local Group fully insured medical cost trends to a range of 8.0 percent, plus or minus 50 basis points. Medical cost trends are also being impacted by less favorable than expected prior year reserve development in 2008.
>
> • Lower Than Expected Fully Insured Enrollment. Medical enrollment exceeded 35.2 million members as of February 29, 2008, representing growth of 410,000 members from December 31, 2007. Although this overall membership increase was in-line with the Company's expectation, the composition of growth was weighted more towards self-funded products than the Company planned. Enrollment in fully insured products was below expectations primarily due to a shortfall in Medicare Advantage growth and declines in Small Group and Individual membership.
>
> • Changing Economic Environment. The Company believes that current economic conditions have partially contributed to the lower fully insured enrollment results and higher than expected benefit buy-downs. In addition, a Medi-Cal premium reduction is scheduled for July 1, 2008, in California, the Company's largest State Sponsored market with approximately 1.2 million members.

Compl. ¶ 154.

Following this announcement, WellPoint stock declined from $65.92 per share on March 10, to close at $47.26 per share on March 11, a decrease of $18.66 per share.

Compl. ¶ 155.

Plaintiffs allege in their Complaint that Defendants knew that WellPoint stock was inflated prior to the March 10 announcement (making it an imprudent investment for the Plan) based on the following factors: the company was continuing to experience increases in medical costs to the extent that there was no basis in fact supporting the company's prior earnings or benefit expense ratio guidance; the company's reserves for medical costs were understated; new enrollment was weighted toward self-funded policies, as opposed to the more profitable fully-insured ones; the company did not experience significant new fully-insured enrollment; growth in the company's Medical Advantage slowed while enrollment in other areas also declined; economic factors at the time meant that the decline in fully-insured members experienced in 2007 would not change in 2008; the company was being adversely impacted by economic factors; WellPoint had inadequate internal controls, which led to inaccurate data; the company was engaged in unfair business practices; and had failed to consolidate its multiple IT systems, leading to an inability to generate or access accurate financial data. Compl. ¶¶ 161(a-i).

## Legal Analysis

As noted previously, Defendants have filed a motion to dismiss Plaintiffs' Amended Complaint. To survive this motion to dismiss, Plaintiffs' allegations for breaches of fiduciary duties and ERISA violations must comply with the requirements of Federal Rule of Civil Procedure 8(a)(2), which straightforwardly requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" However, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)

(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, (2007)). "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do

not suffice." Id. A party moving to dismiss nonetheless bears a weighty burden. "[O]nce

a claim has been stated adequately, it may be supported by showing any set of facts

consistent with the allegations in the complaint." Twombly, 550 U.S. 544, 563 (2007)

(citing Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th

Cir. 1994) ("[At the pleading stage] the plaintiff receives the benefit of imagination, so

long as the hypotheses are consistent with the complaint.")). In addressing a Rule

12(b)(6) motion, we treat all well-pleaded factual allegations as true, and we construe all

inferences that reasonably may be drawn from those facts in the light most favorable to

the non-movant. Lee v. City of Chicago, 330 F.3d 456, 459 (7th Cir. 2003); Szumny v.

Am. Gen. Fin., 246 F.3d 1065, 1067 (7th Cir. 2001).

In ruling on Defendants' Motion to Dismiss, we must determine whether Plaintiffs

have sufficiently alleged: (1) that each respective defendant was a fiduciary to the Plan;

(2) that there was some breach of each respective defendant's fiduciary duty; and (3) that

any such breach caused harm to Plaintiffs. See Howell v. Motorola, Inc., 2011 U.S. App.

LEXIS 1193, at *25-26 (7th Cir. Jan. 21, 2011). We address below Plaintiffs' allegations

in light of each of these elements.

## I.    Defendants' Fiduciary Status

Defendants argue that all three counts in the Amended Complaints should be

dismissed against WellPoint, Anthem, and the Director Defendants because none of them was a fiduciary of the Plan.[2]  Plaintiffs rejoin that all Defendants were in fact fiduciaries of the Plan and that they all breached their respective duties.  Although we do not dismiss Defendants on this basis at this time, we note the following for the parties' benefit.

Throughout the parties' submissions, a great deal of confusion exists regarding the relationship between Defendants WellPoint and Anthem.  This confusion is epitomized in the Amended Complaint, which states that its use of the term "WellPoint" should be understood to be inclusive of WellPoint's subsidiary, Anthem, and Anthem's Pension Committee and that the term "Board" should be understood to mean the directors of both WellPoint and Anthem.  Compl. ¶ 30.  The Amended Complaint, however, organizes its allegations regarding "Defendants' Fiduciary Status" based on separate allegations for WellPoint, Anthem, WellPoint's Directors, and members of the Pension Committee (who all had positions with the "Company").[3]  Compl. ¶¶ 32-42; 43-47; 68-95.

Defendants' Motion sets forth arguments explaining the reasons WellPoint, Anthem, and WellPoint's Directors were not fiduciaries of the Plan, on the basis of which

_____

[2]Defendants do not dispute that the Pension Committee Defendants were fiduciaries of the Plan.

[3]To add to the confusion, Plaintiffs make repeated references to the Compensation Committee without explanation as to if or how that Committee is associated, if at all, with the Plan.  According to the Amended Complaint, the Compensation Committee exists as a subsection of the Board of WellPoint that was responsible for assisting WellPoint's Board "in discharging its responsibilities relating to benefits provided by the Company to its employees." Compl. ¶ 33.  As mentioned above, certain of the Director Defendants were also members of this Compensation Committee.

arguments it requests that all three counts in the Amended Complaint be dismissed as to those Defendants. They note that the Plan Documents define "Fiduciary" as "the Employer, the Board of Directors, the Pension Committee, or the Trustee," and that the terms "Employer" and "Board of Directors" both refer to Anthem as opposed to WellPoint. Pl.'s Ex. B, §§ 2.11, 2.13, 2.25, 2.33. Furthermore, the Plan Documents specify Anthem's Pension Committee as the Plan Administrator and give that Committee exclusive responsibility for administration and management of the Plan, appointment and removal of the Plan Trustee, and communications with Plan participants. Pl.'s Ex. B, §§ 7.2, 8.1, 8.6. Finally, they note that the Plan Documents give Anthem's Board of Directors authority to appoint and remove Pension Committee members. Id.

In response, Plaintiffs attribute the responsibility for appointing and monitoring the Plan Administrator (the Pension Committee) to WellPoint and its directors. Resp. at 8, 11-12. As the Seventh Circuit recently held in Howell, "There is no doubt that those who appoint plan administrations have an ongoing fiduciary duty under ERISA to monitor the activities of their appointees." 2011 U.S. App. LEXIS 1193 at *58-59 (citing Leigh v. Engle, 727 F.2d 113, 134-35 (7th Cir. 1984)). However, as noted above, §8.1 of the Plan Document, which Plaintiffs cite in support of this argument, expressly vests this duty in *Anthem's* Board of Directors. Defendants raised this point in their Motion to Dismiss (Defs.' Mem. at 5, 9), but Plaintiffs' Response fails to explain this inconsistency.[4] Pls.'

---

[4]We note that Plaintiffs' argument that the preparation of certain WellPoint SEC filings
(continued...)

Resp. at 11-12.

Although we have serious doubts regarding the fiduciary status of WellPoint or the Director Defendants, we need not resolve that question at this juncture. In fact, although the Seventh Circuit has ruled that such a determination is permissible, see generally Caremark, Inc., 474 F.3d 463 (affirming district court decision dismissing a complaint because defendant was not acting as a fiduciary in the relevant actions detailed in the complaint), many courts in this district have declined to pass on the sufficiency of allegations of fiduciary status at the motion to dismiss stage. See, e.g., Patten v. N. Trust Co., 703 F. Supp. 2d 799, at 808-09 (N.D. Ill. 2010); George v. Kraft Foods Global, Inc., No. 08 C 3799, 2009 U.S. Dist. LEXIS 11775, 2009 WL 4884027at *14 (N.D. Ill. Dec. 17, 2009); Porterfield v. Orecchio, No. 07 C 3654, 2008 U.S. Dist. LEXIS 2215, 2008 WL 130921, at *3 (N.D. Ill. Jan. 9, 2008) ("[A] determination as to what extent an alleged fiduciary exercised control of ERISA plan assets is typically premature at the motion to dismiss stage because the court lacks sufficient facts to make the necessary analysis."); Smith v. Aon Corp., No. 04 C 6875, 2006 U.S. Dist. LEXIS 27297, 2006 WL 1006052, at *4 (N.D. Ill. Apr. 12, 2006). Thus, for now we will assume that WellPoint,

_____

[4](...continued)
that were incorporated into communications to Plan participants conferred fiduciary status to WellPoint and its directors has been specifically rejected. Lingis v. Motorola, Inc., 649 F. Supp. 2d at 875 (citing In re WorldCom, Inc., 263 F. Supp. 2d at 766) see also Hill v. Tribune Co., 2006 U.S. Dist. LEXIS 71244, at *68, n. 18 ("when SEC filings are incorporated in plan documents, simply signing SEC filings does not make a corporate officer a fiduciary of the plan. However, if a corporate officer is *otherwise* a fiduciary of the ERISA plan, he or she will be responsible, in his or her capacity as a plan fiduciary, for SEC filings incorporated in the plan's summary plan description.")(emphasis added).

the Director Defendants, and Anthem were all functional fiduciaries of the Plan.

However, given the confusion addressed by us above, should Plaintiffs choose to file an

amended complaint (as provided for below), they are directed to clarify their allegations

in this regard.

## II.    Application of the Presumption of Prudence

Defendants argue that Count I of Plaintiffs' Amended Complaint should be

dismissed because Defendants are entitled to a "presumption of prudence" with regard to

their decision to continue to offer WellPoint stock, and that Plaintiffs' allegations cannot

overcome that presumption.  For the reasons explained below, we disagree.

According to Defendants, the Plan was an EIAP, that is, an "employee individual

account plan".  Defs.' Mot. at 15.  Plaintiffs do not dispute this characterization.  Pls.'

Resp. at 19-20.  Fiduciaries of EIAPs are generally afforded a presumption of prudence

where the Plan requires investment in company stock.  In re General Growth Props., 2010

U.S. Dist. LEXIS 44234, at *16 (N.D. Ill. May 6, 2010) (citing Moench v. Robertson, 62

F.3d 553, 568-69 (3d Cir. 1995); Pugh v. Tribune Co., 521 F.3d 686, 699 (7th Cir. 2008)).

The rationale underlying this presumption is to prevent a trustee from having to choose

between acting prudently on the one hand and violating the stated goals of the plan on the

other.  In re General Growth Props., 2010 U.S. Dist. LEXIS 44234, at *18.  Although the

Seventh Circuit has yet to opine on the extent to which the presumption of prudence

applies where investment in company stock is not absolutely required, well reasoned

decisions from other trial courts in this circuit have held that the presumption does not

apply in such situations.  Lingis v. Motorola, Inc., 649 F.Supp.2d 861, 879 (N.D. Ill.

2009) *aff'd* Howell, 2011 U.S. App. LEXIS 1193 (7th Cir. 2011); In re General Growth

Props., 2010 U.S. Dist. LEXIS 44234, at *18; Patten v. Northern Trust Co. et. al., 703 F.

Supp. 2d 799, 810 (N.D. Ill. 2010) ("The presumption of prudence would apply here if it

is the Plan's expectation that [the Company] stock be a required investment option but not

where the decision of whether to offer company stock as an option is left to the

fiduciaries' discretion.").

        Thus, in order to determine whether the presumption of prudence applies in this

case, we must examine Plaintiffs' allegations regarding the goals of the Plan.  Plaintiffs

maintain that "it is within the complete discretion of the Plan Administrator to determine

whether to offer WellPoint stock as an investment option."  In support, they cite to the

following statements in the SPD: "The Plan Administrator will designate Funds from time

to time."  As mentioned above, Plaintiffs' Amended Complaint also alleges, "[o]n

information and belief, the plan does not limit the ability of the Plan fiduciaries, including

the Plan administrator, to remove the option, or divest assets invested in the option as

prudence dictates."  Compl. ¶ 58.  Having reviewed Plaintiffs' Amended Complaint as

well as the plan documents, we see no basis for concluding that the fiduciaries were

required to offer WellPoint stock as an option.  Defendants point out that the Plan

documents contemplated WellPoint as an investment option.  See Ex. B. §§ 7.2(a), 7.4

("Effective June 1, 2002, WellPoint Stock is added as an investment option.").

Furthermore, they note that the detailed provisions in the Plan document concerning

voting right and tender offers associated with WellPoint stock reinforce the intention to continue to offer it as an option. However, nothing about WellPoint stock being an investment option removes the discretion of the Plan fiduciaries' to continue to offer it. At this stage in the litigation, we must accept Plaintiffs' allegations as true which, along with the Plan documents, make clear that there is no requirement on the part of the Plan fiduciaries to invest in WellPoint stock. Thus, we conclude that the presumption of prudence does not apply to Count I of Plaintiffs' Amended Complaint.

### III.    Count I: Claim for Imprudence

Plaintiffs' Amended Complaint Count I provides as follows:

> Plaintiffs allege in Count I that certain Defendants, each having certain responsibilities regarding the management and investment of Plan assets, breached their fiduciary duties to the Plan and Plan participants by failing to prudently and loyally manage the Plan's investment in Company securities by (1) continuing to offer WellPoint common stock as a Plan investment option when it was imprudent to do so; (2) failing to provide complete and accurate information to Plan participants regarding the Company's financial condition and the prudence of investing in Company stock; and (3) maintaining the Plan's pre-existing investment in WellPoint stock when Company stock was no longer a prudent investment for the Plan. These actions/inactions run directly counter to the express purpose of ERISA pension plans, which are designed to help provide funds for participants' retirement.

Compl. ¶ 8. Although couched in a single count, we read this part of the Amended Complaint to allege two related violations of fiduciary duty – (1) a claim of imprudent investment in WellPoint stock; and (2) a misrepresentation or nondisclosure claim. Both of these claims would be subject to dismissal if, as Defendants argue, Plaintiffs have failed to adequately plead Defendants' knowledge of information that rendered

Defendants' decision imprudent to continue to offer WellPoint stock as an investment option or rendered Defendants' statements misrepresentations. Thus, we focus on Plaintiffs' allegations in this context.

"ERISA imposes no duty on plan fiduciaries to continuously audit operational affairs. Rather, . . . a duty to investigate only arises when there is some reason to suspect that investing in company stock may be imprudent – that is, there must be something akin to a 'red flag' of misconduct." Pugh v. Tribune Co., 521 F.3d 686, 700 (7th Cir. 2008). Plaintiffs maintain that WellPoint's pre-March 10 guidance was false in that it "failed to take into account the increased costs and decreased profits of the Company, the nature of the healthcare industry at that time, and economic factors in general which all affected the Company's financial well-being and consequently affected the risk to Plan participants of investing in WellPoint stock." Pl.'s Resp. at 29-30 (citing Compl. ¶ 161).

Plaintiffs maintain that they have sufficiently alleged that Defendants were privy to information regarding the company's finances and stock price by virtue of their positions at the company. See, e.g. ¶ 33 ("Because of their positions as directors of the Company, the Director Defendants had access to non-public information concerning WellPoint, including the Company's true financial condition and outlook."); ¶¶ 122-123 (alleging that "WellPoint management including several of the Defendants knew, or should have known" about the company's failure to integrate information technology systems and problems relating to the company's billing systems); ¶ 161 (blanket allegation regarding "Defendants'" knowledge regarding a litany of problems that

23

Plaintiffs allege rendered the guidance issued by the company false). However, "[a] conclusory statement that all defendants should have known specific facts about a company is generally insufficient to state a claim; it must be alleged that each defendant was in a position to know or learn of the information." Pugh v. Tribune Co., 521 F.3d 686, 701 (7th Cir. 2008).

As we recently determined with regard to the securities fraud case related to this matter, Plaintiff's Amended Complaint contains very few references to any particular Defendant's knowledge. See Wade v. WellPoint, Inc. et. al., 740 F. Supp. 2d 994, *42-43 (S.D. Ind. 2010)(J. Barker). The allegations include a brief account of the various Defendants' job titles and do not reveal any particular facts indicating that any one of the Defendants would have been privy to adverse information putting them on notice that WellPoint stock should have been considered an imprudent investment or statements made during the Class Period were false. See e.g. Compl. ¶ 47 ("Defendant Wayne S. DeVeydt ("DeVeydt") has served as the Company's Executive Vice President and Chief Financial Officer since June 2007. Defendant DeVeydt also served as the Company's Senior Vice President and Chief Accounting Officer since June 2005 and Chief of Staff from 2006 to 2007. Upon information and belief, defendant DeVeydt served as a member of the Pension Committee during the Class Period. Defendant DeVeydt was a fiduciary of the Plan, within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that he was a named fiduciary and exercised discretionary authority with respect to the management and administration of the Plan and/or management and disposition of the

24

Plan's assets.").  In the Amended Complaint, the most specific allegation is that

Defendants Burke, Glasscock, Ward, and Brown were "responsible for the Company's

false financial statements." Compl. ¶¶ 36, 37, 41, 44.  In <u>Pugh</u>, the Seventh Circuit found

similar allegations to be inadequate.  521 F.3d at 701.  In addition, the Amended

Complaint includes allegations that Plaintiffs characterize as "admissions" of knowledge

on the parts of Pension Committee Defendant DeVeydt and Director Defendant Braly.

For example, Plaintiffs allege:

> Questioned by a Citigroup analyst concerning the time at which WellPoint
> recognized that fiscal fourth-quarter 2007 medical costs had increased
> beyond the levels that WellPoint had reserved for, defendant DeVeydt
> responded that "by basically mid February [2007], we had pretty good
> visibility that we were starting to develop less favorably."

Compl. ¶ 148.  Furthermore, on the March 10, 2008 conference call, Defendants Braly

and DeVeydt "admitted that there were existing adverse trends they did not factor into

their January 23, 2008 guidance."  Compl. ¶ 154.

    These statements simply do not support a finding that Braly or DeVeydt should

have known that WellPoint's stock was artificially inflated.  Both statements are nothing

more than after-the-fact explanations of two instances in which WellPoint found itself

under-reserved for increased medical costs.  The March 10th statement simply

acknowledges the obvious – that there was a miscalculation that caused the company to

revise its previous guidance.  Furthermore, the fact that the company may have realized in

February 2007 that medical costs were beyond the levels for which WellPoint had set its

reserves does not mean that the company was required to make a disclosure of that

knowledge at that time, much less that the Pension Committee should have realized at that point that continuing to offer WellPoint stock as an option was imprudent. In other words, such a "realization" would not amount to a "red flag" signaling the imprudence of continuing to offer WellPoint stock as an option.

For these reasons, we hold that Plaintiffs' allegations do not support an inference that any named individual Defendant knew or should have known information that would have rendered Defendants' decision imprudent to continue to offer WellPoint stock as an option or that Defendants' statements were misrepresentations. Therefore, Count I of Plaintiffs' Amended Complaint must be dismissed.

## IV.    Count II: Claim for Disloyalty or Conflict of Interest

Count II of Plaintiffs' Amended Complaint alleges that Defendants violated their fiduciary duty of loyalty under ERISA § 404(a), which requires fiduciaries to discharge their duties with respect to a plan solely in the interest of and for the exclusive purpose of providing benefits to the participants and beneficiaries. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

Plaintiffs allege that Defendants breached this duty by "inter alia: failing to timely engage independent fiduciaries who could make independent judgments concerning the Plan's investments in the Company's own securities; and by otherwise placing their own and/or the Company's interests above the interests of the participants with respect to the Plan's investment in the Company's securities." Compl. ¶ 202. Specifically, Plaintiffs allege that, rather than investigate whether to take actions necessary to protect the Plan,

Defendants chose to continue to offer WellPoint stock as a Plan investment option. Compl. ¶ 180.  Furthermore, Defendants who knew or should have known that WellPoint's stock price was artificially inflated benefitted from this knowledge by selling their WellPoint stock for significant personal gain.[5]  Compl. ¶ 181.  Thus, Plaintiffs' Count II is essentially a repeat of Count I but with the added allegations attributing a motive to Defendants Glasscock, Burke, Ward, and Brown.  Because, as discussed above, we find Plaintiffs have failed to state a claim related to the Defendants' alleged decision to continue to offer WellPoint stock as an investment option, the allegations regarding the stock sales add nothing to our previous analysis.  Therefore, Count II must also be dismissed.

## V.      Count III: Claim for Failure to Monitor

Defendants assert that Plaintiff's Count III, which alleges failures on the parts of WellPoint and the Director Defendants to monitor other fiduciaries and their liability as co-fiduciaries, is entirely derivative of Counts I and II.  Thus, they assert, dismissal of those counts warrants dismissal of Count III as well.  Rogers v. Baxter Int'l, Inc., 710 F. Supp. 2d 722, 740 (N.D. Ill. 2010)("several courts have held that a failure to monitor claim is derivative in nature and must be premised an underlying breach of fiduciary duty.")  Plaintiffs do not dispute this contention.  Thus, Count III of Plaintiff's Amended Complaint must be dismissed as well.

---

[5]Plaintiffs allege that Defendants Glasscock, Burke, Ward, and Brown sold artificially inflated stock earning in excess of $37.79 million.  See Compl. ¶ 181.

## **Conclusion**

For the reasons detailed herein, we rule that Plaintiffs' Amended Complaint fails to allege a breach of fiduciary duty on the part of any specific individual Defendant. Therefore, Defendants' Motion to Dismiss Amended Complaint is <u>GRANTED</u>, without prejudice. Plaintiffs are allowed 45 days within which to seek leave to further amend its Complaint to conform to these rulings. Failure to do so within the allotted time shall result in the entry of final judgment with prejudice.

IT IS SO ORDERED.

Date: _____03/30/2011_____

_SARAH EVANS BARKER, JUDGE_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Matthew Thomas Albaugh
BAKER & DANIELS - Indianapolis
matthew.albaugh@bakerd.com

Seth  Aronson
O'MELVENY & MYERS LLP
saronson@omm.com

Edward W. Ciolko
BARROWAY TOPAZ KESSLER MELTZER & CHECK, LLP
eciolko@btkmc.com

Robert N. Eccles
O'MELVENY & MYERS LLP
beccles@omm.com

Stephen J. Fearon Jr.
SQUITIERI & FEARON, LLP
stephen@sfclasslaw.com

Lori G. Feldman
MILBERG LLP
lfeldman@milberg.com

Theresa S. Gee
O'MELVENY & MYERS, LLP
tgee@omm.com

Lindsay L. Geida
O'MELVENY & MYERS LLP
lgeida@omm.com

Scott D. Gilchrist
COHEN & MALAD LLP
sgilchrist@cohenandmalad.com

Mark K. Gyandoh
BARROWAY TOPAZ KESSLER & CHECK, LLP
mgyandoh@btkmc.com

Robert I. Harwood
HARWOOD FEFFER LLP
rharwood@hfesq.com

Arvind B. Khurana
MILBERG LLP
akhurana@milberg.com

Irwin B. Levin
COHEN & MALAD LLP
ilevin@cohenandmalad.com

Michael M. Maddigan
O'MELVENY & MYERS LLP
mmaddigan@omm.com

James A. Maro
BARROWAY TOPAZ KESSLER MELTZER & CHECK, LLP
jmaro@btkmc.com

Thomas James McKenna
GAINEY & MCKENNA
tjmckenna@gaineyandmckenna.com

Donna Siegel Moffa
Barroway Topaz Kessler Meltzer & Check, LLP
dmoffa@btkmc.com

Peter A. Muhic
BARROWAY TOPAZ KESSLER MELTZER & CHECK, LLP
pmuhic@btkmc.com

Gary P. Price
LEWIS & KAPPES
gprice@lewis-kappes.com

Samuel K. Rosen
HARWOOD FEFFER LLP
488 Madison Avenue
New York, NY 10022

Thomas R. Ruge
LEWIS & KAPPES
truge@lewis-kappes.com

Christopher G. Scanlon
BAKER & DANIELS - Indianapolis
chris.scanlon@bakerd.com

Richard E. Shevitz
COHEN & MALAD LLP
rshevitz@cohenandmalad.com

Gary S. Tell
O'MELVENY & MYERS, LLP
gtell@omm.com

Jessica L. Thorn
O'MELVENY & MYERS, LLP
jthorn@omm.com

S. Melisa Twomey
WEXLER WALLACE LLP
smt@wexlerwallace.com

Kenneth A. Wexler
WEXLER WALLACE LLP
kaw@wexlerwallace.com